1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

9

## SOUTHERN DISTRICT OF CALIFORNIA

10

| KRISTIANE SMITH, | CASE NO. 13cv3061-WQH (BGS) |
| Plaintiff, | |
| vs. | ORDER |
| LAW OFFICES OF PATENAUDE & FELIX, A.P.C., | |
| Defendant. | |

16

HAYES, Judge:

17
18

The matter before the Court is the Motion to Dismiss filed by Defendant Patenaude & Felix, A.P.C.  (ECF No. 16).

19

**I. Background**

20

On December 17, 2013, Plaintiff Kristiane Smith commenced this action by filing a Complaint against Defendant Patenaude & Felix, A.P.C.  (ECF No. 1).  On February 3, 2014, Plaintiff filed a First Amended Complaint ("FAC") alleging violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681b ("FCRA"), the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g(a) ("FDCPA"), and the Rosenthal Fair Debt Collection Practices Act, Cal. Civ. Code § 1788.15(a) ("RFDCPA").  (ECF No. 6).

26

On February 17, 2014, Defendant filed a motion to dismiss.  (ECF No. 8).  On July 23, 2014, the Court dismissed the FAC without prejudice.  (ECF No. 12).  On August 26, 2014, Plaintiff filed a Second Amended Complaint ("SAC"). (ECF No. 14).

On September 17, 2014, Defendant filed the Motion to Dismiss, accompanied by a request for judicial notice. (ECF No. 16). On October 1, 2014, Plaintiff filed an opposition. (ECF No. 18). On October 13, 2014, Defendant filed a reply. (ECF No. 19).

## II. Allegations of the SAC

On April 25, 2013, Defendant "violated the FCRA by initiating a hard pull of Plaintiff's credit report from TransUnion without permissible purpose, thereby reducing her credit score." (ECF No. 14 at 3). "Defendant is attempting to collect an alleged but non-existent debt on behalf of its client TD BANK USA, N.A." *Id.* "TD BANK USA, N.A. bought the alleged but non-existent debt, in default, from TARGET INC. on or around March 13, 2013." *Id.*

"Defendant purposefully hid the suit it had filed on June 19, 2013 on behalf of TD BANK USA, N.A. from Plaintiff. Defendant did not serve the suit on Plaintiff until January, 2014, long after Plaintiff filed this Federal suit." *Id.* at 4. Plaintiff became aware of this lawsuit in November 2013 when she reviewed her credit report. The delayed discovery "is clear ... by the abundance of action taken by Plaintiff after reviewing her credit report in November 2013...." *Id.* "On January 22, 2013, Plaintiff disputed the alleged debt, and sent a demand for validation on the account to TARGET NATIONAL BANK, to which TARGET refused and failed to respond." *Id.* at 3. On February 11, 2013, Plaintiff sent another demand for validation to Target Brands, Inc. (SAC Ex. B, ECF No. 14 at 23). On March 11, 2013, Plaintiff sent another demand for validation to Target Brands, Inc. (SAC Ex. C, ECF No. 14 at 30).

> After becoming aware of the lawsuit filed by Defendant, Plaintiff diligently attempted to confirm validation of the alleged account with all 3 entities. None of which responded. Plaintiff has been diligent in her attempts to resolve matters involved with the alleged account for over 18 motions. All attempts have been ignored.

(ECF No. 14 at 4).

"Plaintiff does not owe any debt to TD BANK USA, N.A., PATENAUDE AND FELIX, or TARGET." *Id.* at 5. "Defendant PATENAUDE AND FELIX A.P.C had 'no

reason to believe' that the alleged account was legitimate at the time it pulled Plaintiff's credit report.  Defendant had no legitimate business purpose for obtaining Plaintiff's credit report." *Id.*  Because Defendant purchased the account from TD Bank USA, N.A., Defendant "should have known that Plaintiff did not initiate a business transaction with its client TD Bank USA, N.A." *Id.*  "It should have known that the alleged account does not involve, or belong to Plaintiff." *Id.*  "Defendant had no evidence or reason to believe the alleged debt was legitimate, prior to Defendant pulling Plaintiff's credit report." *Id.*  "Defendant was negligent in its duties in fulfilling the certification requirements pursuant to 15 USC 1681(e)(a), prior to pulling Plaintiff's credit report." *Id.*

"Defendant failed to send Plaintiff a 30 day validation notice within 5 days of the initial communication, which was on April 25, 2013 when Defendant pulled Plaintiff's credit report without permissible purpose." *Id.*  "Defendant is continually attempting to collect a disputed debt.  Plaintiff disputed the alleged debt numerous times with TARGET, prior to TD BANK'S purchase of the alleged account." *Id.* at 6.  Defendant also misrepresented the amount of the alleged debt because "Defendant claims damages in the amount of $1,760.59" in a state-court lawsuit but claimed $2,043.09 in "the notice sent by Defendant on November 15, 2013." *Id.*

The SAC asserts seven claims for relief: (1) violation of the FCRA, 15 U.S.C. section 1681b; (2) violation of the FDCPA, 15 U.S.C. section 1692g; (3) violation of the RFDCPA, California Civil Code section 1788.17; (4) violation of the FDCPA, 15 U.S.C. section 1692e(2); (5) violation of the FDCPA, 15 U.S.C. section 1692e(8); (6) violation of the FDCPA, 15 U.S.C. section 1692c(10); and (7) violation of the FDCPA, 15 U.S.C. section 1692f(1).

## III.  Discussion

### A.    Request for Judicial Notice

Defendant has submitted a request for judicial notice of the following material: (1) the summons and complaint filed on June 19, 2013, in the Superior Court of

California for the County of Sacramento, entitled *TD Bank USA, N.A., As Successor in Interest to Target National Bank v. Kristiane Smith*, case number 34-2013-00146865; and (2) a November 15, 2013 letter from Defendant to Plaintiff that is also attached as Exhibit D to the SAC. (ECF No. 16-3). Plaintiff does not appear to oppose judicial notice of either document, but contends that "[t]he mere act of filing a suit, provides no evidence to the validity of the suit. Defendant had no reason to believe the alleged debt belonged to the Plaintiff, and filed its suit in bad faith." (ECF No. 18 at 6).

Federal Rule of Evidence 201 provides that "[t]he court may judicially notice a fact that is not subject to reasonable dispute because it ... is generally known within the trial court's territorial jurisdiction; or ... can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 210(b). Courts "may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue." *U.S. ex rel. Robinson Rancheria Citizens Council v. Borneo, Inc.*, 971 F.2d 244, 248 (9th Cir. 1992) (internal quotations and citation omitted). In ruling on a motion to dismiss, a court may consider "materials incorporated into the complaint by reference...." *Metzler Inv. GMBH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1061 (9th Cir. 2008).

The Court may take judicial notice of the record in case number 24-2013-00146865 as another court's proceedings that has a "direct relation to matters at issue." *Borneo, Inc.*, 971 F.2d at 248. The Court may take judicial notice of the November 15, 2013 letter because it is incorporated by reference in the SAC. Defendant's request for judicial notice is granted.

**B.    12(b)(6) Standard**

Federal Rule of Civil Procedure 12(b)(6) permits dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Federal Rule of Civil Procedure 8(a) provides that "[a] pleading that states a claim for relief must contain ... a short and plain statement of the claim showing that the pleader is entitled

to relief." Fed. R. Civ. P. 8(a)(2).  Dismissal under Rule 12(b)(6) is appropriate where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory.  *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).

"[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting Fed. R. Civ. P. 8(a)).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citation omitted).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citation omitted).  "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id*. at 679.  "In sum, for a complaint to survive a motion to dismiss, the non-conclusory factual content, and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quotations and citation omitted).

### C.     Violation of the FCRA (First Claim)

Defendant contends that pulling Plaintiff's credit report to collect on her debt is a permissible purpose under the FCRA.  Defendant contends that Plaintiff has failed to allege any impermissible purpose under the FCRA.  Plaintiff contends that Defendant "should have known that the alleged debt did not belong" to Plaintiff.  (ECF No. 18 at 4).  Plaintiff relies on *Cappetta v. GC Servs. Ltd. P'ship*, 654 F. Supp. 2d 453 (E.D. Vir. 2009) for the proposition that a debt collector can be liable under the FCRA when it

"should have known" that it had no legitimate purpose pulling a plaintiff's credit report. *Id.* Plaintiff also contends that Defendant did not certify that it pulled Plaintiff's credit report for a proper purpose.

15 U.S.C. section 1681b(f) prohibits a "person" from using or obtaining "a consumer report for any purpose unless ... (1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished under this section; and (2) the purpose is certified in accordance with section 1681e of this title by a prospective user of the report through a general or specific certification." 15 U.S.C. § 1681b(f). A consumer report is authorized to be furnished by a consumer reporting agency to "a person which [a consumer reporting agency] has reason to believe ... (A) intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer...." 15 U.S.C. § 1681b(a)(3). 15 U.S.C. section 1681e requires consumer reporting agencies to maintain "reasonable procedures" to ensure that "prospective users of the information identify themselves, certify the purposes for which the information is sought, and certify that the information will be used for no other purpose. 15 U.S.C. § 1681e(a). A consumer report is "any information by a consumer reporting agency bearing on a consumer's credit worthiness...." 15 U.S.C. § 1681a(d)(1).

To qualify as a permissible purpose under section 1681b(a)(3)(A), a "credit transaction must both (1) be a credit transaction involving the consumer on whom the information is to be furnished and (2) involve the extension of credit to, or review or collection of an account of, the consumer." *Pintos v. Pac. Creditors Ass'n*, 605 F.3d 665, 674 (9th Cir. 2010) (en banc) (quotations omitted). "[A] person is 'involved' in a credit transaction for purposes of § 1681b(a)(3)(A) where she is 'draw[n] in as a participant' in the transaction, but not where she is 'oblige[d] to become associated' with the transaction." *Id.* at 675 (citing *Andrews v. TRW, Inc.*, 225 F.3d 1063, 1067 (9th Cir. 2000)). In *Pintos*, the plaintiff's vehicle was towed by police officers. The towing

company towed the vehicle, obtained a lien on the vehicle, and sold the vehicle.  The towing company then asserted a deficiency claim against the plaintiff, and transferred that claim to the defendant, a collection agency.   The district court granted the defendants' motion for summary judgment because the defendant collection agency had a permissible purpose in obtaining the plaintiff's credit report.   The Ninth Circuit reversed, reasoning that the plaintiff "did not participate in seeking credit from the towing company."  *Id.*

> She owned the car that was towed, so she was not as completely distant from the transaction as the victim of identity theft in *Andrews*, but neither was she a participant in the typical transaction where an extension of credit is requested.   She had no contact with [the towing company or the defendant] until [the towing company] towed her car.  She never asked to have the vehicle towed; [the towing company] simply towed the car by direction of the police then tried to collect the charges.  [The plaintiff] did not initiate the transaction that resulted in [the defendant] requesting her credit report.   As the Seventh Circuit held in *Stergiopoulos v. First Midwest Bancorp, Inc.*, 427 F.3d 1043, 1047 (7th Cir. 2005), § 1681b(a)(3)(A) can be relied upon by the party requesting a credit report "only if the consumer initiates the transaction."

*Id.*  The Ninth Circuit concluded that because the claim against the plaintiff "did not result from a transaction initiated" by the plaintiff, section 1681b(a)(3)(A) did not authorize the defendant to obtain the plaintiff's credit report.  *Id.* at 676.

In this case, the SAC alleges that Defendant violated the FCRA "by initiating a hard pull of Plaintiff's credit report from TransUnion without permissible purpose" because "Defendant is attempting to collect an alleged but non-existent debt on behalf of it's [sic] client TD BANK USA, N.A."  (ECF No. 14 at 3).  The SAC alleges:

> Defendant PATENAUDE AND FELIX A.P.C. had "no reason to believe" that the alleged account was legitimate at the time it pulled Plaintiff's credit report.  The alleged account was bought while in default by TD BANK USA, N.A. Therefore Defendant PATENAUDE AND FELIX A.P.C., should have known that Plaintiff did not initiate a business transaction with it's [sic] client TD BANK USA, N.A.  It should have known that the alleged account does not involve, or belong to Plaintiff. TD BANK USA, N.A. could not have provided evidence of the alleged account being legitimate, to Defendant, because such evidence does not exist.  Defendant had no evidence or reason to believe the alleged debt was legitimate, prior to Defendant pulling Plaintiff's credit report.  Defendant knew it was not in possession of any application on the alleged account.

1  *Id.* at 5.  The allegations of the SAC make clear that Defendant pulled Plaintiff's credit

2  to collect a debt she did not owe and was not "involved" with.  *Id.*  Because Plaintiff has

3  alleged that she was not "involved" in the alleged credit transaction, a "non-existent

4  debt" that Defendant is attempting to collect, Plaintiff has sufficiently alleged that

5  Defendant did not have a permissible purpose in pulling Plaintiff's credit report.

6  *Pintos*, 605 F.3d at 674-75; *see also Grigoryan v. Convergent Outsourcing, Inc.*, No.

7  CV 12-1499, 2012 WL 4475455, at *4 (C.D. Cal. Sept. 24, 2012) (denying the

8  defendant debt collector's motion for judgment on the pleadings on an FCRA claim

9  where the plaintiff alleged that "at no point prior to learning of defendant's inquiry into

10  her credit report did plaintiff have any interaction or relationship with defendant in any

11  form, nor any outstanding debts or judgments owed to defendant[;]" no allegations in

12  the complaint showed that the defendant was authorized by a third party to collect on

13  a debt involving a consumer credit transaction entered into by the plaintiff).  The Court

14  concludes that Plaintiff has stated a claim for violation of the FCRA.

15      Defendant's motion to dismiss Plaintiff's First Claim for violation of the FCRA

16  is denied.

17      **D.    Violation of the FDCPA**

18          **i.  Violation of 15 U.S.C. section 1692g (Second Claim)**

19      Defendant contends that it was not required to send Plaintiff a debt validation

20  because Plaintiff did not request it within thirty days of Defendant sending Plaintiff a

21  demand letter.[1]  Defendant contends that it need only be established that this demand

22  letter was sent, not received, and that Plaintiff cannot rebut the presumption that the

23  demand letter was received after it was placed in the mail.   Plaintiff contends that

24  Defendant has offered no evidence that the demand letter was sent.  Plaintiff contends

25  _____

26      [1] Defendant submits the Declaration of Jeffrey W. Speights in support of the
    Motion to Dismiss and in order to demonstrate the dates on which these events
27  occurred. (ECF No. 16-2).  The Court does not consider this declaration because, "[a]s
    a general rule, 'a district court may not consider any material beyond the pleadings in
28  ruling on a Rule 12(b)(6) motion.'" *Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th
    Cir. 2001) (quoting *Branch v. Tunnell*, 14 F.3d 449, 453 (9th Cir. 1994), *overruled on
    other grounds by Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002)).

that she has rebutted the presumption (or will be able to do so) by stating that she never received the demand letter by mail.

15 U.S.C. section 1692g(a) requires that, within five days after an "initial communication," a debt collector must send the consumer a "written notice" containing certain information regarding the debt "unless the ... information is contained in the initial communication...." 15 U.S.C. § 1692g(a). "The term 'communication' means the conveying of information regarding a debt directly or indirectly to any person through any medium." 15 U.S.C. § 1692a(2). Section 1692g(b) provides:

> If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector.

15 U.S.C. § 1692g(b). Where a "written notice" that complies with section 1692g(a) is sent to the debtor, the debtor must send a verification request under section 1692g(b) within thirty days of receipt of the written notice in order to create any obligation on the debt collector's part. *See Mahon v. Credit Bureau of Placer Cnty. Inc.*, 171 F.3d 1197, 1202-03 (9th Cir. 1999) (holding that the plaintiffs' "tardy request for verification of the debt ... did not trigger any obligation on the part of the [defendant] to verify the debt"); *see also* 15 U.S.C. § 1692g(a) (requiring that, within five days after the initial communication, the debt collector shall send the debtor a "written notice" containing "a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt ... is disputed, the debt collector will obtain verification of the debt or a copy of a judgment against the consumer and a copy of such verification or judgment will be mailed to the consumer by the debt collector....").

The SAC alleges that "Defendant also refused and failed to send to [sic] initial demand letter as required by the FDCPA...." (ECF No. 14 at 4). The SAC alleges that "Defendant failed to send Plaintiff a 30 day validation notice within 5 days of the initial

communication, which was on April 25, 2013 when Defendant pulled Plaintiff's credit report without permissible purpose." *Id.* at 5.  The SAC also alleges that Plaintiff became aware of the debt in November 2013 when she reviewed her credit report, and Plaintiff first sought to validate the debt on January 22, 2013.  The SAC fails to plausibly allege an "initial communication" under section 1692g, a prerequisite to triggering any debt collector duties under this section.  *See Vartanian v. Portfolio Recovery Assocs., LLC*, No. 2:12-cv-08358, 2013 WL 877863, at *6 (C.D. Cal. Mar. 7, 2013) ("[Plaintiff] does not contend that [Defendant] ever contacted him....  There was then no 'initial communication' from [Defendant] sufficient to trigger the 15 U.S.C. § 1692g(a)'s notice requirement.  Neither was there any debt-collection practices to stop under § 1692g(b)."); *McNall v. Credit Bureau of Josephine Cnty.*, 689 F. Supp. 2d 1265, 1269 (D. Or. 2010) ("[Defendant's] letter was not the 'initial communication' about the collection of the debt which would trigger the validation notice requirements of 15 U.S.C. § 1692(a).").  Defendant's alleged pulling of Plaintiff's credit report on April 25, 2013 is not a "communication," which is "the *conveying* of information regarding a debt...." 15 U.S.C. § 1692a(2) (emphasis added).  The Court concludes that Plaintiff has failed to plausibly allege an "initial communication" under 15 U.S.C. section 1692g.

Defendant's motion to dismiss Plaintiff's Second Claim for violation of section 1692g is granted.

### ii. Violation of 15 U.S.C. section 1692e (Fourth Claim)

Defendant asserts that it did not misrepresent the amount of Plaintiff's debt. Defendant contends that the difference between the amount prayed for in the April 2013 state-court complaint and the amount demanded in a November 2013 letter to Plaintiff does not demonstrate a misrepresentation of Plaintiff's debt in November 2013. Defendant asserts that the increased amount in the November 2013 letter includes legal costs that Defendant had accumulated in the interim.  Defendant contends that it is entitled to recover its actual costs in bringing a state court action, citing California Code

1  of Civil Procedure sections 1032-1033.5.  Plaintiff does not address these contentions
2  in opposition.

3      It is a violation of the FDCPA to make a false representation, "in connection with
4  the collection of any debt," regarding "the character, amount, or legal status of any debt;
5  or ... any services rendered or compensation which may be lawfully received by any
6  debt collector for the collection of a debt."  15 U.S.C. § 1692e(2).  Section 1692f
7  provides that "the following conduct is a violation of this section ... [t]he collection of
8  any amount (including any interest, fee, charge, or expense incidental to the principal
9  obligation) unless such amount is expressly authorized by the agreement creating the
10  debt or permitted by law."  15 U.S.C. § 1692f(1).

11      The SAC alleges that Defendant only claimed damages of $1,760.59 in the state-
12  court complaint but stated in a November 2013 letter to Plaintiff that Plaintiff owed
13  $2,043.09.  The state-court complaint requests "$1,760.59, which is the reasonable
14  value, is due and unpaid despite plaintiff's demand ... [and] [f]or such other and further
15  relief as the Court deems just and fair."  (ECF No. 16-5 at 9).  Under California law,
16  costs are only recoverable by the prevailing party.  *See* Cal. Code Civ. Proc. § 1032
17  ("Except as otherwise expressly provided by statute, a prevailing party is entitled as a
18  matter of right to recover costs in any action or proceeding.").  Whether Defendant was
19  entitled to include court costs in its representation to Plaintiff of her alleged debt is a
20  factual dispute not properly resolved on a motion to dismiss.[2]

21      Defendant's motion to dismiss Plaintiff's Fourth Claim for violation of 15 U.S.C.

22
23      [2] Defendant has cited no legal authority for the proposition that it cannot be
liable as a matter of law for  including court costs in its representation of the amount of
24  Plaintiff's alleged debt.  *Cf. Shula v. Lawent*, 359 F.3d 489, 490-92 (7th Cir. 2004)
(affirming summary judgment for the plaintiff and holding that the defendant violated
25  section 1692e when it represented to the plaintiff that the plaintiff owed court costs
incurred in an abandoned proceeding because no Illinois law permitted the defendant
26  to collect costs prior to judgment); *Fritz v. Resurgent Capital Servs., LP*, 955 F. Supp.
2d 163, 171-72 (E.D.N.Y. 2013) (denying the defendant's motion to dismiss an FDCPA
27  claim for allegedly misrepresenting the amount of the plaintiff's debt to a credit
reporting agency because, under New York law, "a party is not liable for court costs
28  unless and until there is a judgment in favor of the opposing party" and "[b]y including
court costs in the debt it reported to credit reporting agencies, [the defendant]
misrepresented the amount of the debt").

1  section 1692e is denied.

2      **E.**    **Other Claims**

3      Defendant makes no contentions specific to Plaintiff's Third, Fifth, Sixth, and

4  Seventh Claims.  Defendant contends generally:

5        Plaintiff's Complaint does not plead any viable cause of action that should
   survive this Motion to Dismiss. Plaintiff's vague allegations that P&F

6        failed to communicate the debt was disputed and that P&F attempted to
   collect a debt not authorized by an agreement are without merit and should

7        not withstand this Motion. Plaintiff has not presented a plausible theory of
   recovery for any of her causes of action and therefore her Second

8        Amended Complaint should be dismissed with prejudice.

9  (ECF No. 16-1 at 16).

10      Defendant's motion to dismiss Plaintiff's Third, Fifth, Sixth, and Seventh Claims

11  is denied.

12  **IV.  Conclusion**

13      IT IS HEREBY ORDERED that the Motion to Dismiss (ECF No. 16) is

14  GRANTED in part and DENIED in part.  Plaintiff's Second Claim is DISMISSED

15  without prejudice.  No later than thirty days from the date this Order is filed, Plaintiff

16  may file a motion for leave to amend the Second Amended Complaint accompanied by

17  a proposed third amended complaint.  If Plaintiff does not file a motion for leave to

18  amend, this case will proceed on the remaining portions of the Second Amended

19  Complaint.

20      If, alternatively, Plaintiff chooses to file a motion for leave to amend, the third

21  amended complaint must be complete in itself and may not incorporate by reference

22  prior versions of the complaint or other filings in this action.

23  DATED:  December 17, 2014

24                   *William Q. Hayes*

25                   **WILLIAM Q. HAYES**
                    United States District Judge

26

27

28